UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY JOHNSON and LAYNE BUTLER, on behalf of a class of similarly situated individuals, and themselves individually,<br><br>                            Plaintiffs,<br><br>v.<br><br>ASHLEY FURNITURE INDUSTRIES, INC., a Wisconsin Corporation; and Does 1 through 25, inclusive,<br><br>                            Defendants. | Case No.: 13cv2445 BTM(DHB)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARD** |

    Plaintiff Perry Johnson has filed a Motion for Final Approval of Class Action Settlement and a Motion for an Award of Attorney's Fees, Costs, and Incentive Payment. On March 7, 2016, the Court held a hearing on the motions. For the reasons discussed below, Plaintiff's motions are **GRANTED**.

### I. PROCEDURAL BACKGROUND

    On October 10, 2013, Plaintiff Perry Johnson, a California resident, and Layne Butler, a New York resident, brought this putative class action against Ashley Furniture Industries, Inc. ("Ashley"). Their Complaint alleged that Ashley violated the Song-Beverly Credit Card Act ("SBCCA"), California Civil Code §

1747.08, and New York GBL § 520-a, by requesting customers' personal identification information from credit card and debit card transactions in California and New York.

In an order dated November 4, 2014, the Court granted a motion to dismiss claims brought by Ashley. The Court dismissed Plaintiffs' claim under New York law, Plaintiffs' California claim as to debit cards, and Plaintiffs' claim for injunctive relief under the SBCCA.

After three separate days of an ENE conference and settlement conferences with Magistrate Judge Bartick, the parties reached a class-wide resolution and entered into a proposed Settlement Agreement and Release.

On August 19, 2015, the Court held a hearing on Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement.  At the hearing, the Court requested supplemental briefing regarding (1) the types of items that the putative class members purchased; (2) the average price of the putative class members' "take with" transactions; (3) the types and number of items priced at $25.00 or less available for purchase in California Ashley Furniture HomeStores; and (4) the usage rates of merchandise vouchers in other SBCCA cases.

Ashley filed Supplemental Briefing in response to the Court's inquiries, and the Court held an additional hearing on November 24, 2015.  In an order dated December 1, 2015, the Court granted preliminary approval of the class action settlement.

## II. DISCUSSION

### A. Motion for Final Approval

#### 1. Class Certification

Previously, the Court granted provisional certification of the class, defined

as:

> All Ashley Furniture HomeStore customers who were requested or required to provide, and did provide and had recorded, their personal identification information (which includes, but is not limited to, a customer's address, ZIP code, telephone number, and/or email address), during a credit card transaction at a Ashley Furniture HomeStore in California between October 10, 2012 and the Preliminary Approval Date, and who took all of their purchases with them at the conclusion of the transaction.[1]

To certify a settlement class, the requirements of Rule 23 must generally be satisfied. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). However, the Court need not inquire whether the case, if tried, would present management problems. Amchem Prods., Inc. v. Windsor, 521 U.S. 1, 613 (1997).

Rule 23(a) sets forth four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. The Court finds that all four of these requirements have been satisfied.

The numerosity requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The proposed class is numerous, consisting of 23,600 "Known Class Members" and 15,500 "Unknown Class Members."[2]

---

[1] Class Members do not include (a) AFI, AHS, Southwestern, Stoneledge, Del Monte Furniture Rental, Inc., Empty Heads, Inc., Dobbs TV and Appliance Limited Partnership, MPB Furniture Corporation, Santa Maria Décor, Inc., River Rock Interiors, Inc., Sang Kim, Corp., Saki Trans, Inc., Visalia Sang Kim, Corp., Fairfield Furniture Solutions, Inc., Rohnert Park Furniture Solutions, Inc., Fremont Furniture Solutions, Inc., Concord Furniture Solutions, Inc., and Oakland Furniture Solutions, Inc., and their respective parents, subsidiaries, affiliates, and control persons, as well as officers, directors, agents, attorneys, employees, and immediate family members of all such persons, and (b) the Court and its staff. Further, the Settlement Class excludes individuals who would cause disqualification of the judges assigned to this case. Pursuant to 28 U.S.C. § 455(b)(5)(iii), any judge of the United States shall disqualify himself if he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.

[2] "Known Class Members" are all Class Members who can be identified from the records of Ashley's licensees. "Unknown Class Members" were customers of California Ashley Furniture HomeStores owned and operated by Southwestern and Unrelated Licensees during a period of time in 2012-2013 when the point of purchased systems utilized by these entities did not distinguish between credit card and non-credit card transactions, or between Take-With Transactions and other transactions.(Settlement Agreement, §§ 3.12, 3.18).

There are common questions of fact and law concerning Ashley's licensees requesting personal identification information in connection with credit card purchases of "Take With" items.  Plaintiff's claims are typical because he claims that in March of 2013, he visited an Ashley Furniture store in San Marcos and was asked for personal identification information when making his purchase using his credit card.  (Compl. ¶¶ 14-16.)

It appears that Plaintiff and his counsel will fairly and adequately protect the interests of the class.  They have diligently prosecuted the case up to this point, and it does not appear that there are any conflicts of interest.

In addition to satisfying the requirements of Rule 23(a), a proposed class must qualify for certification under one of the categories in Rule 23(b).  Plaintiff seeks certification under Rule 23(b)(3).  Certification is proper under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "focuses on the relationship between the common and individual issues." Hanlon, 150 F.3d at 1022 (internal quotation marks and citation omitted).  "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7AA Wright & Miller, Federal Practice and Procedure § 1778 (3d ed. 2011).  When one or more of the central issues in the action are common to the class and can be deemed to predominate, certification may be proper under Rule 23(b)(3) even though other important matters, such as damages or affirmative defenses, will have to be tried separately. Id.

Common issues predominate in this litigation. The central issue in this case is whether Ashley violated the SBCCA by requesting and recording personal identification information from customers purchasing "take away" items with credit cards.

In addition, class treatment is the appropriate vehicle to resolve this controversy. Pursuant to Rule 23(b)(3), the Court should consider four non-exclusive factors when considering whether class action is a superior method of adjudication, including: (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

Here, the potential monetary relief for each class member would be small. Under Cal. Civ. Code § 1747.08(e), civil penalties are up to $250.00 for the first violation and up to $1,000.00 for each subsequent violation. Given the small potential recovery and the number of class members, it is undoubtedly more efficient to resolve their claims as part of a class action. Furthermore, due to the common issues in this case, it is desirable to litigate the claims in one forum to ensure consistency of rulings and findings. There is no indication of any competing litigation, and the Court need not be concerned regarding any difficulties with management of the class action due to this settlement.

In sum, the requirements or Rule 23(a) have been satisfied and the Court therefore certifies the Settlement Class under Rule 23(b)(3).

**2. <u>Fairness, Reasonableness, and Adequacy of the Settlement</u>**

    a. <u>Terms of the Settlement</u>

Under the Settlement, Defendant will automatically distribute to each of the "Known Class Members" a $25.00 Merchandise Voucher, which will be available

as a store credit.  The same $25 Merchandise Voucher will be made available to the "Unknown Class Members" upon submission of a timely and valid Claim Form wherein the Unknown Class Member attests that he/she used a credit card (not a debit card) to make a purchase of a take-with item (not an item for delivery).

Defendant also agrees to no longer request personal identification information in conjunction with any "Take With" transaction at Ashley Furniture HomeStores they operate in California.

Class Members may request that Ashley not use their personal identification information for marketing purposes.

### b. Legal Standard

Before approving a class action settlement, the court must determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  In reaching this determination, courts consider a number of factors, including:   (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.2004).

When a settlement agreement is negotiated prior to formal class certification, the court must also scrutinize the settlement for evidence of collusion or other conflicts of interest.  In re Bluetooth Headset Products Liability Lit., 654 F.3d 935, 946-47 (9th Cir. 2011).  Signs of collusion include: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing" arrangement that provides for the payment of attorney's fees

separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund. Id. at 947.

### c. Strength of Plaintiff's Case and Risk, Complexity, Expense, and Duration of Litigation

Plaintiff would face significant risks in continued litigation. Ashley disputes that requesting a cardholder's personal identification information violates § 1747.08 if the consumer voluntarily gives the information for marketing purposes. (Fineman Decl. ¶ 6.) Ashley would also oppose class certification on the ground that each interaction with a Class Member must be evaluated individually to address issues such as whether the information was requested away from the register, in close proximity to a credit card payment, etc. (Id.) Thus, this settlement avoids the risk and expense of continued litigation.

### d. Amount Offered in Settlement

The Known Class Members who are reachable will automatically receive a $25.00 Merchandise Voucher. It appears that the Claims Administrator was able to reach over 20,000 of the Known Class Members. (Am. Geraci Decl. ¶¶ 6,10-13.) Accordingly, the monetary value to the Known Class Members is $500,000 or more. The Claims Administrator was able to provide notice to over 14,000 Unknown Class Members. (Id.) Upon submission of a timely and valid Claim Form, Unknown Class Members also receive a $25.00 Merchandise Voucher. According to the Claims Administrator, 1,056 claims forms have been filed by Unknown Class Members. (Am. Geraci Decl. ¶ 16.) Some of the forms (174) are deficient in some manner, and these claimants have been given notice and an opportunity to correct the deficiency. (Id.) Assuming 1,000 Unknown Class Members receive a voucher, the monetary value to the Unknown Class Members

is $25,000.

The voucher is not a coupon and has actual value. As set forth in Ashley's Supplemental Brief in support of its Motion for Preliminary Approval [Doc. 38], there are over two thousand items under $25 for sale at its stores, including plates, bowls, glasses, wall art, trays, vases, candleholders, figurines, table decorations, picture frames, clocks, towels, artificial flowers, pillows, and rugs. Class Members do not have to buy more expensive items to redeem their vouchers. Furthermore, a survey of putative class members at stores in California operated by Stoneledge Furniture LLC indicates that a large percentage of these customers engaged in two or more purchase transactions during the class period. Therefore, it is likely that the vouchers will actually be used.

In addition, Class Members were provided the option to request that their information not be used for marketing purposes. It appears that two individuals have asked to be removed from electronic marketing by Ashley and its licensees. (Am. Geraci Decl. ¶ 17.)

### e. Stage of Proceedings & Experience and Views of Counsel

This settlement was reached after the completion of all liability and damages discovery. (Fineman Decl. ¶ 7.) Therefore, the parties had sufficient information to evaluate the strengths and weaknesses of their respective positions. Settlement was reached after three days of an ENE conference and settlement conferences.

Both Plaintiff's counsel and Defendant's counsel, who are experienced in the area of class actions and consumer protection litigation, believe that the settlement is fair, adequate, and reasonable.

### f. Reaction of Class Members

The response from the class members has been positive. No objections

have been filed. Only eight individuals have opted out of the settlement. (Geraci Decl., Ex. E.)

### g. Lack of Collusion

Because this settlement was reached prior to class certification, the Court examines the Settlement for evidence of collusion. Bluetooth, 654 F.3d at 946-47. There is no indication of collusion. This is not a situation where the class receives no monetary distribution but class counsel are "amply rewarded." Id. at 947 (quoting Hanlon, 150 F.3d at 1021). As discussed above, the settlement results in real monetary value to the class members. Although Ashley agreed not to oppose an award of attorney's fees and costs in the amount of $140,000, as discussed below, this amount is completely fair and reasonable.

Moreover, the parties reached settlement after motion practice and three days of conferences. The procedural history of the case as well as the substantial benefit provided to the Class by the Settlement indicate there has been no collusion.

### h. Notice to the Class

Rule 23(c)(2)(B) provides that the Court must direct to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." It appears that the best notice practicable has been given. Here, Kurtzman Carson Consultants LLC ("KCC") mailed Summary Notice Postcards or emailed Summary Notices to 23,629 Known Class Members and 15,519 Unknown Class Members. (Geraci Decl. ¶ 6.) KCC also caused a website to be established to provide information about the settlement and to allow Class Members to download copies of the Long Form Notice. (Id. at ¶ 7.) As of March 1, 2016, the website has received 4,784

unique visits. (Id.) When emails were bounced back or were undeliverable, KCC sent Summary Notice Postcards. (Id. at ¶ 11.) Notice packets returned by the U.S. Postal Service with forwarding addresses were re-mailed to the new addresses. (Id. at ¶ 12.) When notice packets were returned by the U.S. Postal Service without forwarding addresses, KCC conducted address searches to locate new addresses and re-mailed the packets when new addresses were found. (Id. at ¶ 13.)

   i. Final Approval

For the reasons discussed above, the Court finds that the Settlement is fair, reasonable, and adequate, and grants final approval of the Settlement.

**B. Motion for Attorneys' Fees, Costs and Incentive Payment**

   1. Attorney's Fees

Plaintiff seeks attorney's fees and costs (combined) in the amount of $140,000.

Under CAFA, "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a). Courts are required to apply heightened scrutiny to coupon settlements. In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178 (9th Cir. 2013).

The Court finds that this settlement does not constitute a "coupon" settlement. In In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 950-51 (9th Cir. 2015), the Ninth Circuit held that Walmart gift cards in the amount of $12 did not constitute "coupons" falling under the umbrella of CAFA. The Ninth Circuit distinguished the Walmart gift cards from rebates offered in other settlements that

resulted in only a small discount on a large purchase:

>These discounts require class members to hand over more of their own money before they can take advantage of the coupon, and they often are only valid for select products or services. The gift cards in this case are different. Instead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item or set of items at Walmart, the settlement gives class members $12 to spend on any item carried on the website of a giant, low-cost retailer. The class member need not spend any of his or her own money and can choose from a large number of potential items to purchase. Even if the gift card is only worth $12, it gives class members considerably more flexibility than any of the coupon settlements listed in the Senate report.
>
>District courts that have considered the issue have not classified gift cards as coupon settlements falling under CAFA. See <u>Reibstein v. Rite Aid Corp.</u>, 761 F.Supp.2d 241, 255–56 (E.D.Pa.2011) (holding that $20 Rite Aid gift cards with "actual cash value," that will be mailed to "(mostly) regular customers, have no expiration date, are freely transferrable, and can be used for literally thousands of products for which ordinary consumers ... have need", are "more like 'cash' than 'coupons'"); <u>Fernandez v. Victoria Secret Stores, LLC</u>, No. CV 06–04149, 2008 WL 8150856, at *2, *4–16 (C.D.Cal. Jul. 21, 2008) (approving a settlement and attorneys' fees award, outside the strictures of CAFA, that provides class members with gift cards to Victoria's Secret); <u>Petersen v. Lowe's HIW, Inc.</u>, Nos. C 11–01996 RS, C 11–03231 RS, C 11–02193 RS (N.D. Cal. Aug. 24, 2012) (approving a settlement and attorneys' fees award, outside the strictures of CAFA, that provides class members with $9 gift cards to Lowe's); see also <u>In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.</u>, MDL No. 1967, Master Case No. 08–1967, 2011 WL 1790603, at *2–4 (W.D. Mo.2011) (holding that a settlement that provides class members with vouchers to obtain new products was not a coupon settlement because the vouchers do not require class members to spend their own money and do not require class members to purchase the same or similar products as those that gave rise to the litigation). Similar to the gift cards in these cases, the Walmart gift cards can be used for any products on walmart.com, are freely transferrable (though they cannot be resold on a secondary market) and do not expire, and do not require consumers to spend their own money.
>
>Our conclusion that the settlement does not constitute a "coupon settlement" within the meaning of CAFA does not conflict with the

    Seventh Circuit's decision in <u>Synfuel Technologies, Inc.</u>, 463 F.3d at 654, as Frank suggests. The pre-paid shipping envelopes in <u>Synfuel</u> are different than the Walmart gift cards. Unlike a pre-paid shipping envelope, a gift card to walmart.com does not simply offer class members one type of complete product. It offers them a set amount of money to use on their choice of a large number of products from a large retailer. Like the gift cards to Rite Aid in <u>Reibstein</u>, part of what separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products. That distinction also separates these gift cards from the e-credits we deemed coupons in <u>In re HP Inkjet Printer Litig.</u>, 716 F.3d at 1176 (labeling e-credits, which could be used to obtain Hewlett–Packard "printers and printer supplies," coupons).

<u>Id.</u> at 950-51.

    As discussed above, although Ashley stores primarily sell furniture, they also sell a large variety of products priced under $25. Therefore, class members have choices as to what they may purchase with the voucher and may purchase an entire product as opposed to just reducing the purchase price. Accordingly, this settlement is not a "coupon" settlement within the meaning of CAFA.

    Utilization of the "lodestar method" is appropriate in class actions brought under fee-shifting statutes. <u>In re Bluetooth</u>, 654 F.3d 935, 942 (9th Cir. 2011). Attorney's fees may be awarded in this case under Cal. Code Civ. Proc. § 1021.5, which authorizes a court to award attorney's fees to a successful party in any action which has resulted in the enforcement of an important right affecting the public interest if: "(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." The enforcement of Cal. Civ. Code §1747.08 in this case satisfies the requirements of § 1021.5. See <u>Seebrook v. The Children's Place Retail Stores, Inc.</u>, 2013 WL

6326487, at *2 (N.D. Cal. Dec. 4, 2013) (awarding attorney's fees under Cal. Code Civ. Proc. § 1021.5 in class action asserting a claim under Cal. Civ. Code § 1747.08).

The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the attorney. Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003). The lodestar figure is "presumptively reasonable" but may be adjusted upward or downward by application of a positive or negative multiplier reflecting "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." Hanlon, 150 F.3d at 1029.

Class Counsel calculated their lodestar using a billing rate of $600 per hour for Neil B. Fineman and Phillip R. Poliner for a combined 154.5 hours and $570 per hour for Lee G. Werner for 72.5 hours, totaling $135,735. Class counsel estimates that another 10 hours will be spent completing the case, bringing the total amount of fees to $141,735. In addition, a total of $824.98 in costs has been incurred in this case.

Upon review of the qualifications and experience of Class Counsel, and based upon the Court's knowledge of prevailing market rates, the Court finds that the requested hourly rates are reasonable. Furthermore, the amount of time expended on this litigation was reasonable given the fine results achieved.

The amount of fees and costs requested ($140,000) is actually less than the fees and costs that will be incurred by the end of this case. Plaintiff's request of attorney's fees and costs in the amount of $140,000 is reasonable and is therefore **GRANTED**.

//
//
//

### 2. Incentive Fee Award

Plaintiff seeks an incentive award of $5,000.00 for the Class Representative, Perry Johnson.

The Court may, in its discretion, award incentive or service awards to named plaintiffs to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publishing Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). District courts must carefully scrutinize incentive awards to ensure that they do not undermine the adequacy of the class representatives. Radcliffe v. Experian Information Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

According to Class Counsel, Perry Johnson has dedicated a substantial amount of time and effort in representing the Class, including meetings with Class Counsel, participating in discovery, and attending ENE conferences. (Werner Decl. ¶ 3.) Mr. Johnson spent numerous hours gathering information in support of his claims and responding to inquiries from Class Counsel. (Id.) His efforts helped Class Counsel prepare the Complaint, discovery, settlement negotiations, and the briefing relating to approval of the settlement. (Id.) In light of the work Plaintiff has done on behalf of the class, the requested incentive award is reasonable and is approved.

//
//
//
//
//
//
//
//

13cv2445 BTM(DHB)

## III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for final approval of the class action settlement is **GRANTED**.  Plaintiff's Motion for Attorney's Fees, Costs, and Incentive Payment is also **GRANTED**.  The Court grants attorney's fees and costs in the total amount of $140,000.  The Court also grants an incentive award to Plaintiff Perry Johnson in the amount of $5,000.   A Final Judgment conforming with this Order shall be filed separately.

**IT IS SO ORDERED.**

Dated:  March 7, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court